IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, ex rel.
CHAD DIETZ, et al.

　　　　　Plaintiffs,

　　　v.

PHILIPS RESPIRONICS, et al.

　　　　　Defendants.

2:21-CV-00272-CCW

## <u>AMENDED OPINION AND ORDER</u>

Before the Court is a Motion to Dismiss filed by Defendants Philips Respironics, Philips North America LLC, and Koninklijke Philips N.V. ("Philips Respironics"). ECF No. 50. For the following reasons, the Court will grant the Motion.

## I.　　Background

Relator Chad Dietz brings this action against Defendants on behalf of the United States and numerous States,[1] alleging violations of the federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, and the analogous *qui tam* provisions of the individual States. ECF No. 40. The relevant factual allegations, taken as true, are as follows.

Philips Respironics manufactures and sells a variety of medical products for respiratory and sleep therapy, including continuous positive airway pressure ("CPAP") machines. ECF No. 40 ¶¶ 6, 19–22. It sells the CPAP machines, and corresponding equipment, to durable medical

---

[1] The Plaintiff States include California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, and Washington.

equipment suppliers ("DMEs") who then provide the CPAP machines to individual patients. *Id.* ¶ 6. Government healthcare providers, such as Medicare and Medicaid, reimburse the DMEs for the cost of the machine as well as the corresponding equipment. *Id.* ¶¶ 6, 47, 66, 72. The government healthcare providers, however, will only reimburse the DMEs if a "patient adherence" requirement is met. *Id.* ¶¶ 7, 96–100. Specifically, the government healthcare providers require that a patient use the CPAP machine for at least four hours per night on 70% of the nights during a consecutive 30-day period within the first three months of use. *Id.* ¶ 97.

In 2016, to help patients meet this requirement, Philips Respironics launched a Patient Adherence Management Service program ("PAMS"). *Id.* ¶¶ 8, 103–109. PAMS "was a high-end, intensive, and comprehensive program that put huge resources, including respiratory therapists and sleep coaches, into making sure as many patients as possible would meet the patient adherence criteria." *Id.* ¶ 8. Once a DME entered a patient into PAMS, Philips Respironics required that the patient continue using only Respironics products—as opposed to its competitor's products. *Id.* ¶¶ 8, 110–114. While Philips Respironics generally charged around $55 per patient to sign up for PAMS, the Sales Department negotiated and implemented PAMS contracts, often lowering the per patient price to as low as $15 to induce DMEs to purchase more Respironics products. *Id.* ¶¶ 9, 125, 131. Philips Respironics also offered lectures and training sessions that qualified as Continuing Education Units ("CEUs") for physicians and other professionals. *Id.* ¶ 11. Respironics provided these classes for free to certain DME suppliers and their referral sources to further induce purchases of Respironics products. *Id.*

From June 2011 to December 2021, Philips Respironics employed Mr. Dietz in various sales managerial roles. *Id.* ¶¶ 17, 18. While at Philips Respironics, Mr. Dietz "gained extensive knowledge of the Company's nationwide marketing and sales practices and procedures for the sale

of CPAP machines and their resupplies." *Id.* ¶ 18.  Mr. Dietz now alleges that Philips Respironics'

PAMS program and free CEUs constitute illegal kickback schemes that were designed to induce

DMEs to purchase more Respironics products and then submit claims for reimbursement with the

government. *Id.* ¶ 85.

Mr. Dietz filed his sealed Complaint in this *qui tam* action on February 25, 2021, alleging

violations of the False Claims Act.  ECF No. 1;  *see also* 31 U.S.C. § 3730(b) (providing for actions

by private persons under the False Claims Act).  After the United States declined to intervene, ECF

No. 28, the Complaint was unsealed on May 2, 2024.  *See* ECF No. 29.  Mr. Dietz then filed an

Amended Complaint, ECF No. 40, and Philips Respironics now moves to dismiss it, ECF No. 50.[2]

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's

factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty.*

*of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed

factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the

elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough

to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to

relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*,

550 U.S. at 556).

---

[2] The Court has jurisdiction over the FCA claims, which raise federal questions, under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) ("[A]t least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss.").

Furthermore, where as here, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Therefore, "a plaintiff must allege the who, what, when, where and how of the events at issue." *U.S. ex rel. Judd v. Quest Diagnostics, Inc.*, 638 F. App'x 162, 168 (3d Cir. 2015) (internal quotations omitted).  In the FCA context, it "is sufficient for a plaintiff to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 169 (internal quotations omitted).

## III.    Legal Analysis

In the FAC, Mr. Dietz alleges four violations of the False Claims Act, including the submission of false claims (Count 1), making false records or statements (Count 2), conspiracy

(Count 3), and reverse false claims (Count 4) as well as state-law claims under the individual States' *qui tam* laws (Counts 5–33). ECF No. 40. Mr. Dietz argues that Philips Respironics' PAMS program and free CEUs constituted improper remuneration offered to induce sales of Respironics products, in violation of the Anti-Kickback Statute ("AKS"). *Id.* Mr. Dietz further maintains that this purported AKS violation shows that Philips Respironics was submitting claims to the government that it knew were legally false, in violation of the FCA. *Id.* Philips Respironics responds that the FAC fails to allege a predicate AKS violation or a violation of the FCA because it does not adequately allege that Philips Respironics willfully engaged in illegal conduct, offered improper remuneration, or induced DMEs to purchase additional products. ECF No. 51 at 9–12. Therefore, Philips Respironics contends that the FAC does not sufficiently allege that it caused false claims to be submitted to the government in violation of the FCA. *Id.*

The Court will first address whether Mr. Dietz has adequately pled a predicate AKS violation, and then whether he has adequately alleged an FCA violation.

### A.     Legal Framework

"The False Claims Act is meant 'to reach all types of fraud . . . that might result in financial loss to the Government.'" *U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 486 (3d Cir. 2017) (quoting *Cook Cty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003)). In relevant part, the FCA imposes liability on any person who: "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B). Applying these provisions, the Third Circuit has held that four elements are necessary to state a claim for an FCA violation: "falsity, causation, knowledge, and materiality." *Petratos*, 855 F.3d at 487.

5

Claims for payment which violate the FCA fall into two broad categories:  factually false claims and legally false claims.  A factually false claim is one in which "the claimant misrepresents what goods or services that it provided to the Government." *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011) (citing *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008)).  A legally false claim, on the other hand, is premised on a "false certification" theory of liability, and it occurs when "the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *Id.* (citing *Conner*, 543 F.3d at 1217).

Here, Mr. Dietz alleges that Philips Respironics caused legally false claims to be filed because it caused DMEs to file reimbursement claims for CPAP machines and corresponding equipment, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a, *et seq*.  "The federal Anti-Kickback Statute prohibits any person or entity from giving or receiving anything of value, including 'a discount or other reduction in price,' to influence the purchase of another product or service reimbursable by a federal healthcare program, unless the value is 'properly disclosed and appropriately reflected' in any claim for reimbursement." *United States v. Bracco USA, Inc.*, No. 24-1668, 2025 WL 1261779, at *1 (3d Cir. May 1, 2025) (citing 42 U.S.C. § 1320a-7b(b)(1), (b)(2), (b)(3)(A)).  "When a claim is tainted by an AKS violation, it is automatically legally 'false' under the FCA." *United States ex rel. Penelow v. Janssen Products, LP*, No. 12-7758, 2021 WL 6052425, at *9 (D.N.J. Dec. 21, 2021) (citing *United States ex rel. Greenfield v. Medco Health Solutions*, 880 F.3d 89, 95 (3d Cir. 2018)).

**B.    Mr. Dietz Has Failed to State a Claim Under the Anti-Kickback Statute.**

Mr. Dietz argues that Philips Respironics violated the AKS because it knowingly and willfully offered remuneration in the form of the PAMS program and free CEUs to induce DMEs

6

to purchase more CPAP machines.  *See generally* ECF No. 40.  Philips Respironics responds that Mr. Dietz has failed to plead an AKS violation because he has not adequately alleged that it willfully engaged in illegal conduct, offered improper remuneration, or induced DMEs to purchase additional products.  ECF No. 51 at 9–12.

To establish a violation of the AKS, Mr. Dietz must plead that (1) Defendants' PAMS program and free CEUs constituted remuneration, (2) at least one purpose of these services was to induce the remunerated parties to purchase more CPAP products from Defendants, and (3) Defendants acted knowingly and willfully to induce such purchases.  *United States ex rel. Travis v. Gilead Sciences, Inc.*, 596 F. Supp. 3d 522, 538 (E.D. Pa. 2022).  To adequately allege that Defendants acted "knowingly and willfully," Mr. Dietz must allege that Defendants "knew [their] conduct was unlawful and intended to do something that the law forbid[s]."  *United States ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, No. 02-2964, 2020 WL 4260797, *11 (E.D. Pa. July 24, 2020) (citing *United States v. Goldman*, 607 F. App'x 171, 174 (3d Cir. 2015)).

Here, Mr. Dietz has failed to sufficiently allege that Philips Respironics knowingly and willfully engaged in illegal conduct.  The FAC does not contain allegations that Philips Respironics offered PAMS and free CEUs knowing that these programs constituted illegal conduct.  *See generally* ECF No. 40.  Instead, the FAC only discusses how PAMS and the free CEUs constituted remuneration and were offered to improperly induce sales of Respironics products.  *Id.* ¶¶ 120–160 (describing how PAMS violates the AKS but not discussing scienter);  161–182 (describing how the free CEUs violate the AKS but not addressing scienter);  *see also United States ex rel. Strunck v. Mallinckrodt Ard LLC*, No. 12-175, 2020 WL 362717, at *4 (E.D. Pa. Jan. 22, 2020) (finding plaintiff adequately alleged scienter where plaintiff pointed to defendant's training programs and policies that reflected an understanding of the AKS, explained that defendant

structured its programs to avoid directly paying illegal copays, and defendant's employee emailed articles describing the illegality of similar programs). While the FAC states that Defendants acted with "actual knowledge of the falsity of their statements, with deliberate ignorance of the falsity of their statements, or with reckless disregard as to the falsity of their statements," ECF No. 40 ¶ 188, such conclusory statements are insufficient to allege scienter. *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014) (explaining that conclusory or bare bones allegations without factual support are insufficient to survive a motion to dismiss); *Dennis v. Evans*, Civil Action No. 1:09-0656, 2011 WL 900911, at *6 (M.D. Pa. Feb. 2, 2011) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Furthermore, while "a party must state with particularity the circumstances constituting fraud or mistake[, m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[G]enerally," however, "is a relative term. . . . [and] is to be compared to the particularity requirement applicable to fraud or mistake." *U.S., ex rel. Pilecki-Simko v. Chubb Institute*, 443 F. App'x 754, 760, n.17 (3d Cir. 2011). According to the Third Circuit, "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* (internal quotations omitted); *see also United States v. Allergan, Inc.*, 746 F. App'x 101, 106 (3d Cir. 2018). Regardless of the applicable pleading standard, the Court finds that the allegations regarding scienter in the FAC fail to satisfy even the less rigid requirements of Rule 8, and Mr. Dietz has, therefore, failed to plead an AKS violation.

## C.    Mr. Dietz Has Failed to State a Claim Under the False Claims Act.

In his FAC, Mr. Dietz relies on a purported AKS violation to meet the first element of the FCA: namely, that Defendants caused a false or fraudulent claim to be submitted. *See generally*

ECF No. 40.  Because the Court has already found that the FAC fails to state a violation of the AKS, *see* Part III.B, and because the FAC does not allege that the claims were legally or factually false in a different way, the Court finds that the FAC fails to state an FCA violation.  Therefore, the Court will dismiss the FAC, but such dismissal will be without prejudice and with leave to amend.

> **D.    The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State-Law Claims.**

Mr. Dietz's remaining claims in Counts 5 through 33 arise under state law.  The Court declines to exercise supplemental jurisdiction over these claims because it will dismiss all claims over which it has original jurisdiction.  *See* 28 U.S.C. § 1367(c), (c)(3).  Accordingly, the Court dismisses these claims without prejudice.

## IV.    Conclusion

For the forgoing reasons, IT IS HEREBY ORDERED that Philips Respironics' Motion to Dismiss, ECF No. 50, is GRANTED, and Mr. Dietz's FAC is DISMISSED WITHOUT PREJUDICE.  IT IS FURTHER ORDERED that Mr. Dietz is GRANTED leave to amend the allegations in his FAC and shall file any amended complaint on or before August 1, 2025.  If Mr. Dietz does not timely file an amended complaint, the dismissal without prejudice will be converted to with prejudice without further action by the Court.

DATED this 22nd day of July, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand

CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record